Pete **WILSON, in his official capacity as Governor of the State of California; Kimberly Belshe, in her official capacity as Director of the State Department of Health Services; and Eloise Anderson, in her official capacity as Director of the State Department of Social Services, Plaintiffs–Appellees,**

v.

**CITY OF SAN JOSE; City of Los Angeles, et al., Defendants,**

**and**

**California League of United Latin American Citizens, Defendant–Appellant.**

No. 95–56565.

United States Court of Appeals, Ninth Circuit.

Submitted March 4, 1997.*

Decided April 15, 1997.

* The panel finds this case appropriate for submission without oral argument pursuant to 9th

Cir.R. 34–4 and Fed.R.App.P. 34(a).

Thomas A. Saenz, Mexican American Legal Defense and Educational Fund, Los Angeles, CA, for defendant–appellant.

Charlton G. Holland, III, Assistant Attorney General, San Francisco, CA, for plaintiffs–appellees.

Before: BROWNING and KLEINFELD, Circuit Judges, and MERHIGE,** Senior District Judge.

MERHIGE, Senior District Judge:

Defendant-Appellant California League of United Latin American Citizens ("LULAC") appeals the order of the district court denying LULAC's Rule 60(b) Motion To Strike Plaintiff–Appellees Wilson, Belshe, and Anderson's ("the State Officers") Rule 41(a)(1) Notice of Dismissal. For the reasons which follow, the court affirms the decision of the district court.

## I.

In January 1995, the State Officers filed a complaint for declaratory relief in California state court naming as defendants, *inter alia*, the City of San Jose ("the City") and LULAC. The State Officers' action sought "declaratory relief interpreting Proposition 187 as a matter of state law so as to uphold its validity and declaring that Proposition 187 does not violate the State Constitution."[1]

Neither LULAC nor the City answered the Complaint but instead removed the action to the United States District Court for the Northern District of California. LULAC simultaneously filed a motion to transfer venue to the Central District of California where LULAC and several other co-defendants were the plaintiffs in two lawsuits challenging the constitutionality of Proposition 187.[2] The State Officers promptly moved to remand the case to state court. On April 14, 1995, the district court entered an order denying the motion to remand, granting the motion to transfer, and ordering the case transferred to the Central District of California pursuant to 28 U.S.C. § 1401(a).

On May 15, 1995, the City served the State Officers with their Answer to the Complaint and simultaneously filed their Answer in the Northern District. The State Officers state that after receiving the City's Answer on or about May 17, their counsel telephoned the Clerk of the Court for the Northern District ("the Northern District Clerk") and inquired if it was possible to file a notice of dismissal in the Northern District. The Northern District Clerk advised counsel that because the case had been ordered transferred, no documents could be filed in the Northern District. The Northern District Clerk also informed counsel that the case file had not physically been sent to the Central District because it had been misplaced.

On May 25, the State Officers mailed a letter (the "Notice Letter") to LULAC and the other defendants in the action informing them that the State Officers intended to file a notice of dismissal as soon as the case was transferred to the Central District. The State officers did not, however, attempt to file this Notice Letter in either the Northern or Central District. Several days later, on June 1, LULAC served its Answer to the Complaint. LULAC's Answer was originally accepted for filing on June 2, but was then returned to LULAC by the Northern Dis-

---

** Honorable Robert R. Merhige, Jr., Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

1. California's Proposition 187 was an initiative statute which sought to regulate undocumented immigration to California.

2. The two lawsuits were *LULAC v. Wilson* and *Gregorio T. v. Wilson*. In *Gregorio T. v. Wilson*, 59 F.3d 1002 (9th Cir.1995), this court upheld the district court's grant of a preliminary injunction enjoining enforcement of Proposition 187.

trict Clerk with the "FILED" stamp blackened-out. Accompanying the pleading was a letter from the Northern District Clerk stating:

[This] action was terminated in the Northern District Court on 4/14/95. NO OTHER DOCUMENTS MAY BE FILED UNDER THE C–95–0633–DLJ CASE NUMBER AS THE CASE IS TERMINATED IN THIS COURT.

(capitals in original).[3]

On June 13, the day the case was docketed in the Central District, the State Officers filed in the Central District their Notice Of Dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1). LULAC and the City moved to strike the Notice Of Dismissal under Fed.R.Civ.P. 60(b) on the grounds that both LULAC and the City had served their Answers prior to the State Officers' filing their Notice Of Dismissal in the Central District.

In September 1995, the district court heard argument on LULAC's Motion. Noting the "unique" circumstances of this case-"that the [district] court clearly participated in the dilatory transference of the files from the Northern District"-the district court denied the motion to strike. LULAC, but not the City, appeals the decision of the district court.

Because the timing of the parties' actions following entry of the Northern District's transfer order bears significantly on the disposition of LULAC's appeal, the court summarizes below the chronology of events relevant to this appeal:

| DATE | ACTION | LOCATION |
|---|---|---|
| 4/14/95 | Transfer Order Northern entered by District | Northern District |
| 4/24/95 | Transfer Order effective N/A pursuant to Local Rule 3–15.4 | Northern District |
| 5/15/95 | City's Answer served | N/A |
| 5/15/95 | City's Answer filed | Northern District |
| 5/25/95 | State Officers' "Notice Letter" served | N/A |
| 6/1/95 | LULAC's Answer served | N/A |
| 6/2/95 | LULAC's Answer filed | Northern District |

| DATE | ACTION | LOCATION |
|---|---|---|
| 6/7/95 | LULAC's Answer returned by Clerk of Northern District | Northern District |
| 6/13/95 | Central District dockets case | Central District |
| 6/13/95 | State Officers' Notice Of Dismissal filed | Central District |

## II.

The State Officers' voluntary dismissal represents the final maneuver in a protracted conflict between the parties regarding the forum in which the constitutionality of Proposition 187 was to be determined. LULAC, who wished to litigate this matter in federal court, seeks remand of this case so that LULAC may request that the district court impose conditions upon the dismissal such as costs, fees, or dismissal with prejudice. LULAC fears that because the case was dismissed without prejudice, the State Officers will simply file another suit in state court, tailoring their complaint so as to preclude removal to federal court. The State Officers, on the other hand, argue that the sole purpose of their suit was to obtain a "state court interpretation of important language in the text of Proposition 187", and that "[o]nce the cause was removed to the Northern District, the reason for the litigation could not be sustained."

This court reviews motions for relief from judgment pursuant to Rule 60(b) under an abuse of discretion standard. *Export Group v. Reef Indus.*, 54 F.3d 1466, 1469 (9th Cir.1995); *Blair v. Shanahan*, 38 F.3d 1514, 1518 (9th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1698, 131 L.Ed.2d 561 (1995). A district court abuses its discretion if its decision rests upon an erroneous view of the law. *Beech Aircraft Corp. v. United States*, 51 F.3d 834, 841 (9th Cir.1995); *Faile v. Upjohn Co.*, 988 F.2d 985, 986 (9th Cir.1993). Before addressing the merits of LULAC's appeal, the court will first review the rules governing voluntary dismissals as well as

---

**3.** The City's Answer, filed two weeks earlier, was accepted for filing and never returned by the Northern District Clerk.

**4.** Local Rule 3–15 of the Northern District of California provides: "Unless otherwise specifically provided in the order, an order transferring an action to another district shall become effective 10 days after filing of the order."

those concerning the transfer of cases from one district to another.

## A. Voluntary Dismissal Under Rule 41(a)(1)

Federal Rule of Civil Procedure 41(a)(1) states, in relevant part:

> [A]n action may be dismissed by the plaintiff without order of court (i) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs.

Fed.R.Civ.P. 41(a)(1).

■ Under Rule 41(a)(1), a plaintiff has an absolute right to voluntarily dismiss his action prior to service by the defendant of an answer or a motion for summary judgment. *Concha v. London,* 62 F.3d 1493, 1506 (9th Cir.1995) (citing *Hamilton v. Shearson–Lehman American Express,* 813 F.2d 1532, 1534 (9th Cir.1987)). A plaintiff may dismiss his action so long as the plaintiff *files* a notice of dismissal prior to the defendant's *service* of an answer or motion for summary judgment.[5] The dismissal is effective on filing and no court order is required. *Id.* The plaintiff may dismiss some or all of the defendants, or some or all of his claims, through a Rule 41(a)(1) notice. *Id.; Pedrina v. Chun,* 987 F.2d 608, 609–10 (9th Cir.1993). The filing of a notice of voluntary dismissal with the court automatically terminates the action as to the defendants who are the subjects of the notice. *Concha,* 62 F.3d at 1506. Unless otherwise stated, the dismissal is ordinarily without prejudice to the plaintiff's right to commence another action for the same cause against the same defendants. *Id.* (citing *McKenzie v. Davenport–Harris Funeral Home,* 834 F.2d 930, 934–35 (11th Cir.1987)). Such a dismissal leaves the parties as though no action had been brought. *Id.* Once the defendant serves an answer or a motion for summary judgment, however, the plaintiff may no longer voluntarily dismiss under Rule 41(a)(1), but must file a motion for voluntary dismissal under Rule 41(a)(2). Fed.R.Civ.P. 41(a). Unlike a Rule 41(a)(1) notice of dismissal, a Rule 41(a)(2) motion requires court approval. *Concha,* 62 F.3d at 1506.

## B. Transfer of Cases

■ The court's consideration of whether the State Officers complied with Rule 41(a)(1) is affected by two rules which governed the transfer of this action from the Northern to the Central District. First, Local Rule 3–15 of the Northern District of California provides that "an order transferring an action to another district shall become effective 10 days after filing of the order." Second, with respect to the transfer of cases under 28 U.S.C. § 1404(a), this court has adopted the docketing date in the transferee court as the time of effective transfer. *Lou v. Belzberg,* 834 F.2d 730, 733 (9th Cir. 1987), *cert. denied,* 485 U.S. 993, 108 S.Ct. 1302, 99 L.Ed.2d 512 (1988). Stated differently, the transfer of a case from one district to another is not complete until the papers are physically docketed in the office of the receiving court. *Id.; accord Starnes v. McGuire,* 512 F.2d 918, 924 (D.C.Cir.1974) (en banc); *Magnetic Eng'g & Mfg. Co. v. Dings Mfg. Co.,* 178 F.2d 866, 868 (2d Cir. 1950). Therefore, during the time between entry of the transfer order and the receipt of the case file in the transferee court, the *transferor* court remains the forum in which pleadings may be filed. If the rule were otherwise, a plaintiff would have no forum in which to file a notice of dismissal between the time that the transfer order is entered and the date on which the papers are received by the transferee court.[6] Conversely,

---

5. The distinction between "service" and "filing" in the context of Rule 41 is significant. The amendments to Rule 41(a) show that the drafters selected the words with precision. Before 1948, the rule only required the plaintiff to serve, not file, a notice of dismissal. While the requirement to "serve" the notice of dismissal was changed to "file" in 1948, the mere service requirement for the defendant was retained. *See* 9 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2363 at 254 (2d ed.1995). This dis-

tinction was emphasized by this court in *Lockary v. Kayfetz,* 917 F.2d 1150, 1157 (9th Cir.1990), where the court allowed a plaintiff to voluntarily dismiss an action even though the defendant had not filed an answer because the defendant had not served plaintiffs with an answer as required by Rule 41(a)(1).

6. As one court noted, "Delays in transit do not catapult cases into the Twilight Zone. Parties

during this same time, a defendant could foreclose the plaintiff from dismissing the action under Rule 41(a)(1) by simply serving an answer. *See Sheldon v. Amperex Elec. Corp.*, 52 F.R.D. 1, 5 (E.D.N.Y.), *aff'd*, 449 F.2d 146 (2d Cir.1971).

 In the instant case, the Northern District transfer order, having been entered on April 14, was effective on April 24 pursuant to Local Rule 3–15. However, the transfer was not complete until nearly two months later, on June 13, when the Central District received and docketed the case. Prior to June 13, the Northern District remained the proper court in which to file documents. Therefore, the Northern District Clerk erred by refusing to file documents after entry of the April 14 transfer order. When considering the improper refusal of clerks to file documents in the wake of a transfer, this court will ignore clerical errors, and treat documents as filed on the dates that they were tendered to the court that should have filed them. *Accord Mahurkar*, 750 F.Supp. 330; *Aero–Colours v. Propst*, 114 F.R.D. 107 (S.D.Tex.), *aff'd*, 833 F.2d 51 (5th Cir.1987).

## C. Did the State Officers Satisfy Rule 41(a)(1)?

Applying the foregoing principles to the instant case, the issue before the court is whether, given the circumstances of this case, the State Officers' May 25 Notice Letter satisfied the filing requirement of Rule 41(a)(1). Rule 41(a)(1) plainly required the State Officers to file, not merely serve, their Notice Of Dismissal. Fed.R.Civ.P. 41(a)(1). It is equally clear, however, that the State Officers were prevented from strictly complying with the filing requirement of Rule 41(a)(1) because the Northern District Clerk informed the State Officers that her office would refuse to accept any documents for filing. Indeed, several days later, the Northern District Clerk expressly refused to accept LULAC's Answer. The Clerk instead returned the document to LULAC accompanied by a letter stating, "NO OTHER DOCUMENTS MAY BE FILED ... AS THE CASE IS TERMINATED IN THIS COURT."

LULAC places great emphasis on the fact that the State Officers did not attempt to "lodge" any document with either the Northern or the Central District, and instead chose to *serve* opposing parties with a notice. LULAC points to two other reported cases involving similar circumstances in which plaintiffs who could not file documents "tendered" or "lodged" their notice of dismissal in both the transferor and transferee courts during the pendency of the transfer. *Aero–Colours*, 114 F.R.D. 107; *Mahurkar*, 750 F.Supp. 330. In each case, the court found that because the clerk of the transferor court inappropriately refused to file documents after a transfer, the court would construe the "lodging" of these documents in the correct court as tantamount to the party having filed the document.

 LULAC argues that because the State Officers did not attempt to lodge a notice of dismissal in either the Northern or Central Districts, the district court should have struck their untimely Notice Of Dismissal. Presumably, had the State Officers acted in the same manner as the plaintiffs in *Aero–Colours* and *Mahurkar*, LULAC would not have opposed the voluntary dismissal. LULAC's argument thus draws a distinction between attempting to file a document with the Clerk's office, and telephoning the Clerk's office to inquire if documents would be accepted. Given the actions of the Clerk's office in this case, this is a distinction without a difference. Even had the State Officers tendered a document to the Northern District, the Clerk's office would not have filed, lodged, or otherwise retained the instrument. Instead, as evidenced by the Clerk's May 7 letter to LULAC, the Northern District Clerk had adopted a policy of returning documents to the parties. The action that LULAC argues the State Officers should have taken would have been a fruitless, wasted effort. The law does not require a party to perform a useless act. *E.g., Comstock & Co. v. United Eng'r & Constructors*, 880 F.2d

must be able to file somewhere." *In re Mahurkar Double Lumen Hemodialysis Catheter Patent*

*Litig.*, 750 F.Supp. 330, 332 (N.D.Ill.1990).

219, 232 (9th Cir.1989); *United States v. Buffalo Coal Mining Co.*, 343 F.2d 561, 565 (9th Cir.1965). Indeed, counsel's Notice Letter was perhaps the only available method for the State Officers to inform LULAC of the State Officers' intention to exercise their absolute right to dismiss the action; the position taken by the Northern District Clerk effectively precluded any other course of action. Accordingly, given that the Clerk's office would have refused to lodge documents, the court will construe the State Officers' Notice Letter as tantamount to a filing of a notice of dismissal. Because the Notice Letter preceded LULAC's Answer, the State Officers were entitled to dismissal pursuant to Rule 41(a)(1).[7]

LULAC directs much of its argument toward the evils of forum shopping, in which LULAC alleges the State Officers engaged. LULAC argues that by refusing to strike the Notice Of Dismissal, the district court allowed the State Officers to "engage freely in forum-shopping, with the bill for their unsuccessful attempt at a new forum footed by [LULAC]."

The court is not persuaded by LULAC's argument. The voluntary dismissal of an action that has been removed to federal court does not constitute the sort of egregious forum shopping that federal courts have traditionally sought to discourage. As Wright & Miller note:

> The right of voluntary dismissal by notice prior to service of the answer or a motion for summary judgment extends as fully to cases removed from a state court as it does to cases commenced in a federal court. Indeed it frequently is used in this situation when a plaintiff, who is unwilling to prosecute the action in federal court, wishes to dismiss in order to start a new action in state court and preclude removal by the joinder of nondiverse parties, a change in the amount sought, or otherwise.

9 Wright & Miller, *Federal Practice & Procedure* § 2363 at 257–58 (footnotes omitted). LULAC's fears concerning the forum shopping that may result from courts permitting

dismissal in cases such as this are unwarranted.

Finally, we note that LULAC chose June 1, 1995, over four months after this action was commenced, as the date to serve its Answer. The timing of LULAC's Answer is suspicious, especially in light of the fact that the state had conveyed its intention to file a notice of dismissal five days earlier. There is no reason to reward with attorneys fees an answer which appears to have been filed before the dismissal only because the clerk erroneously refused to accept filing of the dismissal, and may have been filed only as a means to obtain attorneys fees and costs.

### III.

In light of the inappropriate refusal by the Northern District Clerk to file documents, it was not an abuse of discretion for the district court to deny LULAC's Motion To Strike and permit the State Officers to dismiss their action pursuant to Rule 41(a)(1). The decision of the district court is AFFIRMED.

---

7. The court's opinion should not be read as disapproving of the practice of lodging documents in cases where the clerk will not accept pleadings for proper filing. Indeed, this procedure should be employed in cases where the clerk is willing to do so.

